GreeN, J.
delivered the opinion of the court.
This is a motion against the sheriff of Tipton county, for money in his hands which was made by the sale of the real and *114 personal property of Robert B. Jones, by virtue of several executions in favor of different plaintiffs.
The record discloses the following facts. At the February term, of the Circuit Court of Tipton-county, 1840, Love recov-ed three judgments against Jones for $1950 in all; and on the record, in each case, an entry is made, “Execution stayed four months.” At the same term of the court, Woodson recovered a judgment against Jones for $258, and in this case, also, execution was stayed four months. On the same day, Harper, Eppes & Jones recovered a judgment against the same defendant for $5598 97, upon which there was no agreement of record to stay execution. At June term, 1840, of the same court, John W. Jones recovered a judgment against the same defendant for the sum of $2923 96. An execution was issued on Harper, Eppes & -Jones’ judgment, from the February term, returnable to the June term of the court, but it was returned, “Stayed by order of the plaintiff.”
On all the above judgments, executions were issued, bearing test of June term, 1840, and returnable to October term. On these executions personal property was sold, producing the sum of $2804 42. After the October term, executions were again issued on all the judgments returnable to February term, 1841, and were levied upon the lands of the defendant, which were sold for the sum of $5100.
The Circuit Court ordered, that the proceeds of the personal property be paid pro rata to the several plaintiffs, whose executions were in the hands of the sheriff at the sale thereof, and bearing test of the same court; and that the money arising from the sale of the real estate be first applied to the satisfaction of the judgment in favor of Harper, Eppes & Jones, and that the residue, if any, be applied pro rata to all the other executions.
From this judgment the plaintiff in error, Love, appealed to this court. And the question now is, whether the agreement of record, in the cases of Love vs, Jones, and of .Woodson vs. Jones, that execution be stayed four months, suspended the lien of their judgments on the lands of Jonesfor that period, and thereby gave to Harper, Eppes & Jones’ judgment, which was. recovered at the same term, a priority of lien.
*115 It is insisted by the counsel for Harper, Eppes & Jones, that they have priority of hen on the real estate of the defendant, R. B. Jones, because an order, by consent, was entered of record, suspending the issuance of an execution on Love’s judgment, and on Woodson’s judgment for four months; and the case of Scriba vs. Deans, 1 Brockenbrough’s R. 166, and the case of Cocke vs. Porter, Peck’s R. 33, are referred to insupport of this proposition. In the case of. Scriba vs. Deans, Chief Justice Marshall decided in the Circuit Court -for the District of Virginia, that as the hen of a judgment was unknown to the common law, and was not expressly given by any statute, but had been construed, by the court, to exist by virtue of the statute of Westminster the 2d, (13 Edward 1st, ch. 18,) which gave the elegit, as a consequence of the suspension of a right to sue out that process, the hen of the judgment is also suspended. The same doctrine was held by him afterwards, in the same court, in the case of the United States vs. Morrison et al., in support of which, the- reasoning is very persuasive. In that case the United States had sued out a fieri facias upon their judgment, and the remedy was not exhausted at the date of the deeds of trust under which the defendants claimed. In the opinion of the Circuit Court, the United States could not at the date of the deeds have sued out an elegit, and as the lien is a mere consequence of the right to take out an elegit, that court was of opinion that it did not overreach a conveyance made when this right was suspended. But this decision was reversed in the Supreme Court, (4 Peters R. 124,) on the ground, that the Court of Appeals of Virginia, (Coleman vs. Cocke, 6 Randolph’s Rep. 618,) had decided, that the right to take out tmelegit is not suspended by suing out a fieri facias, and consequently the lien of the judgment continues pending the proceeding on that writ.
In the argument of the case of the United States vs. Morrison, the Attorney General cited a case, (Fox vs. Rootes, not reported,) decided by the Court of Appeals of Virginia, in which it was held, that a judgment creditor is entitled to priority over a subsequent incumbrancer, though his judgment had been rendered many years before, and no execution had ever issued on it, and of course no execution could issue until revived by scire *116 facias. Bat the Supreme Court of the United Stales, in delivering the opinion, do not seem to yield to the doctrine of the case above cited, but reverse the judgment of the Circuit Court, on the ground that the right to sue out the elegit was not suspended 'by suing out the fieri facias, and consequently the lien of the judgment continues. In the same case, (United States vs. Morrison,) Judge Marshall says: “There is no statute in Virginia, which in express terms makes a judgment a lien upon the lands of the debtor. As in England, the lien is a consequence of a right to take out an elegit, during the existence of this right, the lien is universally acknowledged. Different opinions seem at different times to have been entertained of the effect of any suspension of the right.”
It is manifest, that if in England and Virginia, the .lien of a judgment is a consequence of the right to take out an elegit,— the cases which determine that a suspension of that right is a suspension of the lien, — can have no weight in determining the question before us, namely, whether a suspension of the right to take out an execution, is a suspension of the lien which is given by our act of 1831, ch. 90, sec. 7. That act provides, that “all judgments obtained in any courts of record in this State shall be a lien upon the debtor’s land from the time said judgment was rendered: Provided said judgment is rendered in the county where the debtors reside- at the time of the rendition; and, provided, an execution is taken out upon said judgment, and said land sold within twelve months after the rendition.”
Here the lien is not the result of judicial construction; nor does it depend upon the right to sue out any process, but it is expressly given by the statute, which declares it shall exist for one year by force of the judgment alone.
The very argument which proves, that a lien, which exists only because of the right to sue out the elegit, is suspended, whenever the right to that process is suspended, equally proves, that a lien which the statute expressly declares shall exist by force of the judgment alone, cannot be suspended by reason of a suspension of the right to sue out an execution, upon which its existence does not at all depend.
*117 It is true, that our predecessors in this court, in the case of Cocke vs. Porter, (Peck’s R. 33,) held, that the lien'which the courts in England construed to exist by virtue of the statute of Westminster the 2d, did not depend upon the elegit which was given by that statute; and yet they held, that a suspension of á right to sue out an execution, was a suspension of the lien of the judgment. But, with deference, the reasoning in that case is unsatisfactory and inconclusive. Why the lien of the j udgment should be suspended, because of an agreement to stay an execution, when its existence does not depend upon the right to sue out process of execution, it is not easy to perceive. But it is believed the court, in that case, was in error, in supposing that the lien derived by construction of the statute of Westminster the 2d, did not depend upon the elegit which was given by that statute, and that the Supreme Court of the United States is correct, in refering the existence of such lien to the use of the elegit. That statute, (13 Edward 1st, ch. 18,) provides, that “when debt is recovered or knowledged in the King’s Court, or damages awarded, it shall be from henceforth in the election of him that sueth for such debt or damages to have a writ offieri facias unto the sheriff, for to levy the debt of the lands and goods, or that the sheriff shall deliver to him all the chattels of the debtor,"saving only his oxen and beasts bf the plough, and the one-half of his lands until the debt be levied upon a reasonable price or extent.” Now, as at common law, a judgment did not bind the lands, and as the lien is the creature of the courts, derived by construction of this statute, giving the creditor his election to take half the lands, the court holding purchasers to constructive notice of the judgment, it is clear that the lien is dependent upon the elegit here given. Whether a suspension of the immediate right to sue out the elegit, would suspend for such time the lien, Judge Marshall says, (United States vs. Morrison,) “Different opinions seem at different times to have been entertained.” But be this as it may, there is no doubt, but that a lien which a statute expressly declares shall exist by virtue of a judgment, cannot be suspended by a voluntary agreement of record to suspend for a time the issuance of an execution.
We are of opinion, therefore, that the order suspending the *118 issuance of execution for four months, which was made by consent in the casés wherein Love was plaintiff, and in the case wherein Woodson was plaintiff, did not have the effect to suspend the lien of those judgments during that period, but that they are entitled to satisfaction according to their priority, as though the execution had not been stayed.
As it regards the monies which were produced by the sale of the personal property of the defendant, Jones, the court was correct in ordering it to be paid to the several creditors pro rata. The executions were all in the hands of the sheriff at the same time, and bore test of the same term of the court.
The judgment of the Circuit Court will be reversed, and judgment entered according to the rights of the parties as declared in this opinion.